UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ADREANNE RISER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:19-cv-2122-GMB ) |
| JEFFERSON COUNTY BOARD OF EDUCATION., *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff Adreanne Riser's third amended complaint against Defendants the Jefferson County Board of Education ("the Board") and Kendall Stewart, a teacher at Hueytown High School and an employee of the Board. Doc. 47. The third amended complaint alleges that the Board discriminated against Riser under Title II of the American with Disabilities Act ("ADA"), 42 U.S.C § 12182 (Doc. 47 at 10–11), and that both Defendants violated her rights under the Fourteenth Amendment. Doc. 47 at 11–13. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Docs. 22 & 37.

Before the court are motions to dismiss the third amended complaint filed by each defendant. Docs. 49 & 50. Plaintiff filed a response in opposition to the motions (Docs. 52 & 53) and Defendant Stewart filed a reply in support of his

motion. Doc. 54. The Board did not file a reply despite having the opportunity to do so. *See* Doc. 51. The motions are under submission and ripe for decision. For the following reasons, both motions are due to be granted.

## I. STANDARD OF REVIEW

Defendants have moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes the dismissal of some or all of the claims in a complaint if the allegations fail to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor is it proper to assume that a plaintiff can prove facts he has not alleged or that the

defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Assoc. Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

## II. STATEMENT OF FACTS

The following factual summary is based on Plaintiff's third amended complaint,[1] which the court construes in favor of Plaintiff. *See Hazewood*, 551 F.3d at 1224.

---

[1] The Board attached two exhibits to its motion to dismiss. *See* Docs. 49-1 & 49-2. Because this case is before the court on the Board's motion to dismiss under Rule 12(b)(6), the court limits its review to the four corners of the third amended complaint and will disregard the extraneous evidence submitted by the Board for purposes of the determination of the plausibility of Plaintiff's claims. *See Austin v. Modem Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (explaining that the court either must disregard the evidence submitted in support of a motion to dismiss under

Riser, who has Attention Deficit Hyperactivity Disorder ("ADHD") and Autism Spectrum Disorder, was a student at Hueytown High School at all times relevant to the complaint. Doc. 47 at 3. During her lunch period on March 1, 2018, two of Riser's female classmates began harassing her by making insulting and threatening remarks. Doc. 47 at 3. The classmates then began throwing food at Riser. Doc. 47 at 3. One of the girls attempted to lure Riser into a fight, but Riser did not show any interest in an altercation. Doc. 47 at 3.

Defendant Stewart observed this lunchroom behavior from a distance. Doc. 47 at 3. At first, he did not do anything to stop the girls' harassment of Riser. Doc. 47 at 3. Stewart eventually approached the girls and "jokingly offered a dollar to one of the girls . . . if she would 'stop' harassing" Riser. Doc. 47 at 4. The girl responded that one dollar was not enough and asked for another. Doc. 47 at 4. Stewart then took away the girl's water bottle. Doc. 47 at 4. The girls told Stewart that they were going to "assault [Riser] once they left the lunchroom and were in the hallway." Doc. 47 at 4.

Riser and her sister left the lunchroom and were confronted by the same girls who had been harassing Riser. Doc. 47 at 4. When Riser's sister left to find their other sister, one of girls hit Riser on the back of her head with her water bottle. Doc.

Rule 12(b)(6) and evaluate the motion based solely on the pleadings, or must deem the motion to be one filed pursuant to Rule 56 and notify the parties of its intention to do so).

47 at 4.  Riser tried to punch this girl in self-defense, but the other two girls began beating her. Doc. 47 at 4.  They pulled her to the ground by her hair and repeatedly hit her in the head. Doc. 47 at 4.  Riser was unable to get up or defend herself. Doc. 47 at 4.  When she did try to stand, the girls continued to pull her hair and refused to let go. Doc. 47 at 5.  The attack lasted a few minutes and no one came to Riser's assistance during that time. Doc. 47 at 5.  Instead, after the attack was over, Riser walked to the guidance office and asked for help. Doc. 47 at 5.

The Student Harassment Prevention Act mandates that local boards of education "adopt procedural policies to manage and possibly prevent . . . acts against any student by another student or students based on the characteristics of a student." Ala. Code. § 16-28B-2.  It also requires schools to "develop plans or programs, including but not limited to, peer mediation teams, in an effort to encourage students to report and address incidents of bullying, violence, or threats of violence." Ala. Code § 16-28B-4(d).  Riser alleges that "Defendants failed to implement the model policy or to develop plans or programs as required by the Act or failed to properly implement the policy." Doc. 47 at 6.  Additionally, Riser contends that "[i]n so far as there were bullying policies . . . Defendants acted in direct contravention of said rules and regulations." Doc. 47 at 10.

### III.  DISCUSSION

As referenced above, the third amended complaint states two causes of action.

The first is a claim for a violation of Title II of the ADA and it is asserted only against the Board. Doc. 47 at 10–11. The second claim is brought pursuant to 42 U.S.C. § 1983 for a "violation of the Fourteenth Amendment." Doc. 47 at 11. This claim is brought against both the Board and Stewart in his individual capacity. Doc. 47 at 12–13.

**A.     ADA Claims**

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must establish "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability."[2] *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (quoting *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007). Proof of a Title II violation ordinarily

---

[2] The Eleventh Circuit "relies on cases construing [Title II and § 504] interchangeably." *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010) (quoting *Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009)). Additionally, "it is appropriate to look to Title IX case law for guidance in examining discriminatory intent" under Title II and § 504. *J.S., III by & through J.S. Jr. v. Houston County Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017).

entitles a plaintiff only to injunctive relief. *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 831 (11th Cir. 2017). To recover damages, as Plaintiff seeks here,[3] a plaintiff must clear an additional hurdle: she must prove that the entity she has sued engaged in intentional discrimination, which requires a showing of "deliberate indifference." *Liese v. Indian River City Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012).

"Deliberate indifference" is an "exacting standard," *J.S.*, 877 F.3d at 987, and requires proof that "the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." *Liese*, 701 F.3d at 344 (citation omitted). Additionally, to hold a government entity liable, the plaintiff must show that an "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf" had "actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond." *Id*. at 349 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). To qualify, that official must be "high enough up the chain-of-command that his [or her] acts constitute an official decision by the [entity] not to remedy the misconduct." *J.S.*, 877 F.3d at 987 (internal quotation marks omitted).

---

[3] Riser seeks both compensatory and punitive damages (Doc. 47 at 13), but "punitive damages are not available in private suits under [the ADA]." *Boynton v. City of Tallahassee*, 650 F. App'x 654, 658 n.4 (11th Cir. 2016) (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)).

The Board argues that this claim is due to be dismissed as a matter of law because there is no "causal nexus between the altercation that precipitated her complaint and her putative disability." Doc. 49 at 2. The court agrees. Other than the allegation that Riser has ADHD and Autism Spectrum Disorder, there are no allegations in the third amended complaint linking the attack or any discrimination to her alleged disabilities. In fact, the complaint does not even allege that Defendants knew about her alleged disabilities other than one conclusory statement in the recitation of the elements of a Title II claim, and includes only a passing reference to "disability-based bullying" in its discussion of the Board's policies. Doc. 47 at 10 & 11. There are no factual allegations to support these bare assertions. "[T]he pleading standard in Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555). Because "labels and conclusions," "formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient, *id*. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted), the court concludes that Riser's Title II claim is due to be dismissed.

**B.     Section 1983 Claims**

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the

Constitution and laws." 42 U.S.C. § 1983.  To prevail on a claim under § 1983, a plaintiff must show "(1) that the defendant deprived her of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998).  To hold a governmental entity such as the Board liable under § 1983, a plaintiff must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  The governmental entity "must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." *Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007) (emphasis in original) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)).

The third amended complaint does not precisely delineate the alleged constitutional violation. Doc. 47 at 11–13.  Instead, the complaint claims an unspecified violation of the Fourteenth Amendment.  The court nevertheless concludes from the factual allegations and the parties' briefing that Riser alleges a violation of her substantive due process rights. *See* Doc. 49 at 16–20; Doc. 50 at 5–11; Doc. 52 at 4–5; Doc. 53 at 2–7; Doc. 54 at 2–5.  Additionally, the court finds that there are no allegations that could make up any other type of claim under the

Fourteenth Amendment. For these reasons, the court construes the third amended complaint as stating a claim for a violation of Riser's substantive due process rights.

The due process clause of the Fourteenth Amendment prohibits the states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The due process clause "was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotations and citations omitted). The due process clause provides for protection in two forms—substantive due process and procedural due process—and a "violation of either of these kinds of protection may form the basis of a suit under section 1983." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994). The substantive component of the due process clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

Only in certain limited circumstances does the Constitution impose affirmative duties of care on the states. *Doe v. Braddy*, 673 F.3d 1313, 1318 (11th Cir. 2012). As originally defined by the Supreme Court, those circumstances exist where (1) the state takes a person into custody, confining the person against his or her will, and (2) the state creates the danger or renders a person more vulnerable to

an existing danger. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 198–201 (1989). However, the "stated-created danger" doctrine has since been superseded by the standard the Supreme Court employed in *Collins v. City of Harker Heights*, 503 U.S. 115 (1992). *See Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003). Now, "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Id*. (citing *Collins*, 503 U.S. at 128).

Here, Riser attempts to allege that she and the aggressive students were in a custodial relationship with the defendants. Doc. 47 at 4 & 13. This assertion is misplaced and not supported by case law. The Eleventh Circuit has noted that "compulsory school attendance laws do not constitute a restraint on personal liberty sufficient to give rise" to a constitutional duty of protection under the due process clause. *Davis v. Carter*, 555 F.3d 979, 982 n.2 (11th Cir. 2009). Indeed, "each circuit to have addressed the issue has concluded that public schools do not have a special relationship with their students, as public schools do not place the same restraints on students' liberty as do prisons and state mental health institutions." *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel Keys*, 675 F.3d 849, 858 (5th Cir. 2012) (citing cases).

Riser also attempts to base her § 1983 claim on the defendants' deliberate

indifference to her substantive due process rights. Doc. 47 at 13. Even if the defendants acted with deliberate indifference, due process liability does not attach here. The Eleventh Circuit "has been explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." *Davis*, 555 F.3d at 983 (quoting *Nix v. Franklin County Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002)). Therefore, to the extent that Riser's § 1983 claims are based on the defendants' alleged deliberate indifference to her substantive due process rights, the claims fail as a matter of law.

Because Riser was not in a custodial relationship with the defendants, they cannot be held liable for violating her substantive due process rights unless their conduct "can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis*, 555 F.3d at 982. To rise to the conscience-shocking level, conduct most likely must be 'intended to injure in some way unjustifiable by any government interest.'" *Id*. (quoting *Lewis*, 523 U.S. at 849). There are few cases in the Eleventh Circuit where any district court has found that the facts have supported a constitutional due process violation in the school context. Those cases typically include claims based on excessive corporal punishment employed by a school official. *See Kirkland v. Greene County Bd. of Ed.*, 347 F.3d 903 (11th Cir. 2003) (finding violation where high school principal violated a student's constitutional rights after he struck the student with a metal cane in the head, ribs, and back for

disciplinary reasons); *Neal ex rel. Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000) (finding violation where high school coach intentionally struck a student with a metal weight lock, knocking the student's eye out of its socket, as a form of punishment for his involvement in a fight with another student).

The facts here do not fall within these limited confines. Construing the facts in the light most favorable to Riser, Stewart intervened in the bullying he saw in the lunchroom, made light of the situation, and ignored the statement by a classmate that "they were going to assault [Riser] once they left the lunchroom and were in the hallway." Doc. 47 at 4. Nothing in the third amended complaint alleges that Stewart intended to injure Riser. Instead, it is Stewart's inaction that is the focus of Riser's complaint. While Stewart's intervention and later inaction may not have prevented the attack on Riser, his response falls far short of a substantive due process violation as a matter of law. *See Dacosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002) (concluding college instructor's conduct did not rise to conscience-shocking level where instructor intentionally slammed door on student's arm causing the glass to shatter, knocked student back by swinging the door violently, and shoved plaintiff's face); *Nix*, 311 F.3d at 1379 (finding no constitutional deprivation where student died after touching an exposed live wire in teacher's electromechanical class during a voltage-reading demonstration).

Simply put, the complaint's conclusory allegations that Stewart's actions

"shock the conscious" (Doc. 47 at 13) are inadequate to give rise to a constitutional violation. The Eleventh Circuit has held that "when someone not in custody is harmed because too few resources were devoted to their safety and protection, that harm will seldom, if ever, be cognizable under the Due Process Clause." *White v. Lemacks*, 183 F.3d 1253, 1258 (11th Cir. 1999). This case is no exception. Because Riser cannot establish that the defendants deprived her of a constitutional right, her due process claim is due to be dismissed.

Riser also notes the Board's failure to implement an appropriate policy under the Student Harassment Prevention Act. Doc. 47 at 5–10 & 13. Because the court concludes that no constitutional violation occurred, Plaintiff's § 1983 claims necessarily fail without further inquiry into the Board's customs or policies. *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").

## IV. CONCLUSION

For these reasons, it is ORDERED that:

(1)  The Board's Motion to Dismiss the Third Amended Complaint (Doc. 49) is GRANTED; and

(2)  Kendell Stewart's Motion to Dismiss the Third Amended Complaint (Doc. 50) is GRANTED.

A final order of dismissal will be entered separately.

DONE and ORDERED on November 23, 2020.

                                                                                                _____
                                                                                                GRAY M. BORDEN
                                                                                                UNITED STATES MAGISTRATE JUDGE